1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

INAS S. SHAABAN,                                   No. CV 08-03339 CRB

             Plaintiff,                            **ORDER GRANTING SUMMARY
                                                   JUDGMENT**

     v.

COVENANT AVIATION SECURITY,

             Defendant.
_____/

     This dispute involves Plaintiff's taking of FMLA leave and her subsequent

termination by Defendant, both in 2007.  At the motion hearing held on October 30, 2009,

the Court dismissed the third, fourth and fifth causes of action, which Plaintiff withdrew in

her papers.  The Court now grants Defendant's motion for summary judgment on the

remaining two causes of action.

                              **BACKGROUND**

     Plaintiff Inas S. Shaaban worked as a checkpoint security screener for Defendant

Covenant Aviation Security.  MSJ at 3.  On May 16, 2007, Plaintiff met with Cindy Johnson,

an HR Coordinator for Defendant, about taking FMLA leave to care for her mother.  Opp. at

4.  Plaintiff asserts that she explained to Johnson "that I was a caregiver for my elderly and

infirm mother who lived with me, that she was scheduled to travel to Egypt, and that I

needed to accompany her as her caregiver," Shaaban Decl. at 3.[1]  Johnson recalls that

Plaintiff said she would use her leave to care for her mother at home, and that Plaintiff never

informed Johnson that she was going to Egypt.  Johnson Decl. at 3. For the purpose of this

motion, the Court accepts Plaintiff's account of this conversation.

Though Plaintiff now acknowledges that she was entitled to only twelve weeks' leave

under FMLA– a leave period of July 1 through September 22– at the time she mistakenly

believed that she was entitled to three months' leave, and so wrote on her application the

leave period of July 1 through October 1.  Shaaban Decl. at 3; Johnson Decl. Ex. A.  When

Plaintiff met with Johnson on May 16, 2007, Johnson "did not say anything to [Plaintiff]

about the inappropriateness of the three month leave period."  Id.

Plaintiff met again with Johnson several days later.  Id.  At this later May meeting,

Johnson typed some information in the upper portion of Plaintiff's FMLA application, and

explained how Plaintiff's mother's doctor should fill out the remainder of the application.  Id.

Johnson then "assured [Plaintiff] that the leave would be granted so long as [her] mother's

doctor correctly filled out the medical certification form."  Id. at 3-4.[2]  Plaintiff had her

mother's doctor complete the application, checking "no" in the relevant box.  Id. at Ex. 4.

Upon receiving the form, Johnson sent Plaintiff a letter on May 31, 2007 stating that leave

was denied because, having checked "no," Plaintiff's mother's doctor had indicated that

Plaintiff's assistance was not needed.  Johnson Decl. at Ex. B.

On June 4, 2007, Plaintiff returned to HR to discuss her leave.  Shaaban Decl. at 4.

Plaintiff met with HR representatives Susan Harris and Andrea Singh, who explained that

Plaintiff's leave had been denied, and why.  Id.  Harris told Plaintiff that she did not need a

new application, but that she should have the doctor check "yes" in the relevant box, initial it,

and explain the change.  Id. at 4-5.  Neither Harris nor Singh said anything to Plaintiff about

the inaccurate leave dates on the application.  MSJ at 5.  Harris instead "assured" Plaintiff

---

[1] This statement was the subject of an evidentiary objection by Defendant, which the Court denied at the motion hearing.

[2] This statement was also the subject of an evidentiary objection by Defendant, which the Court denied at the motion hearing.

United States District Court
For the Northern District of California

that her "leave was definitely approved, effective upon [her] turning back in the corrected medical certification form" as well as her badge and uniform; Harris also told Plaintiff that she need not meet with HR again before starting leave. Shaaban Decl. at 5. According to Plaintiff, Harris also stated that a letter confirming the approval of Plaintiff's leave would be sent later that month. Id.

On June 7, 2007, Plaintiff had her mother's doctor correct the medical application, checking the relevant box "yes," writing "does require," and initialing the changes. Id.; id. at Ex. 5. That evening, Plaintiff returned the corrected application to a Covenant receptionist, and turned in her badge and uniform. Shaaban Decl. at 5; MSJ at 6. The following morning, June 8, 2007, Plaintiff, along with her mother, husband and children, flew to Egypt. Shaaban Decl. at 5. Plaintiff's return flight was scheduled to arrive in San Francisco on October 2, 2007. Id.

After obtaining a new application directly from Plaintiff's mother's doctor on June 14, 2007, HR sent a letter by certified and first class mail to Plaintiff's home on June 21, 2007, informing Plaintiff that her leave was approved. MSJ at 6. The letter explained, however, that Plaintiff's leave was only approved from July 1, 2007 to September 22, 2007, and that her return-to-work date was September 23, 2007. Id.; Schwachter Decl. Ex. B. at Ex. 19. It further stated: "Please be advised that [Defendant] cannot honor the leave dates stated on your medical certification because it exceeds the federal guideline of the FMLA. . . . Your request is through October 1st, 2007. This exceeds the FMLA . . . allowable leave time by 9 days." Id.

On August 7, 2007, Defendant sent another letter to Plaintiff's home by certified and first class mail, stating that Defendant had been unsuccessful in contacting Plaintiff, had tried to call her nine different times, and that the certified letter sent on May 31, 2007 had been returned unclaimed. Schwachter Decl. Ex. B. at Ex. 23. The letter again explained that Plaintiff's leave would expire on September 22, 2007, and why. Id.

On September 19, 2007, Defendant sent a third letter to Plaintiff's home by certified and first class mail, containing the same information as the previous letter. Schwachter Decl.

3

Ex. B. at Ex. 24.  It gave Plaintiff until close of business September 24, 2007 to return to work.  Id.  Plaintiff did not open or read the letters from Defendant until she returned from Egypt.  Shaaban Decl. at 5.

Nonetheless, on September 19, 2007, while still in Egypt, Plaintiff telephoned Johnson, intending to confirm the details of her return to work on October 3, 2007.  Id.  Larry Perkins, another HR representative, joined the call, and explained to Plaintiff that she was only entitled to 12 weeks, and not three months, of leave.  Id.  Plaintiff eventually acknowledged her error "but argued that, in accompanying my mother to Egypt, I had relied on the assurances from other human relations staff that they were approving my request for FMLA leave, in which I had clearly specified a three month leave duration."  Id.  Plaintiff asserted that she "wanted to appeal up the chain of command for reconsideration in light of her quandary."  Id.

Plaintiff phoned the airlines to try to make a return flight before October 2, 2007, but learned that "all earlier flights were booked."  Id. at 7.  Plaintiff received no follow-up telephone call from Defendant as to her "appeal," and became depressed, such that she was "in no condition to work, even if [she] were back home."  Id.  She called in sick every day to Defendant's attendance control center, explaining that she was depressed.  Id.

Plaintiff did not return to work by September 24, 2007.  MSJ at 7.  On September 26, 2007, Defendant sent Plaintiff a letter advising her that her employment was terminated due to her failure to timely return from FMLA leave.  Shabaan Decl. Ex. 8.  The letter explained that "[a]lthough you have been calling into the Attendance Control Center as 'sick,' you do not have any sick time . . . at your disposal."  Id.

Plaintiff filed suit against Defendant in state court in April 2008.  She included causes of action for (1) interference with FMLA/CFRA rights; (2) retaliation for exercise of FMLA/CFRA rights; (3) discrimination based on national origin and/or ancestry; (4) wrongful nonpromotion and discharge in violation of public policy; and (5) breach of implied covenant of good faith and cooperation.  Schwachter Decl. Ex. A.  Defendant removed the case to this Court in July 2008, and has now moved for summary judgment.  In the course of

opposing the motion for summary judgment, Plaintiff withdrew the last three causes of action from her suit.  Opp. at 2.  Accordingly, only the causes of action relating to Plaintiff's FMLA leave remain.

**DISCUSSION**

1.    Legal Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact issue is "material" only if it could affect the outcome of the suit under the governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Id.

A principal purpose of the summary judgment procedure is to isolate and dispose of factually unsupported claims.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact.  See Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970).  Once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  See Celotex, 477 U.S. at 323-24.  To discharge this burden, the nonmoving party cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial.  See id. at 324.

Special rules of construction apply to evaluating summary judgment motions:  (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n., 809 F.2d 626, 630-31 (9th Cir. 1987).

2.    Interference with FMLA Leave

To establish a claim for interference with FMLA/CFRA rights, an employee must prove: (1) an entitlement to the right claimed; and (2) the employer's interference with or

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    denial of that right.  <u>Faust v. California Portland Cement Co.</u>, 150 Cal. App. 4th 864, 879

2    (2007).  Plaintiff here faces an uphill battle establishing interference with FMLA leave, given

3    that there is no dispute that she received the full twelve weeks' leave to which she was

4    entitled, Schwachter Decl. Ex. B at 83:10-13, 84:7-10, and that she did not return to work at

5    the end of that leave.  However, Plaintiff asserts that Defendant is equitably estopped from

6    asserting that her leave ended before October 1, 2007.  In the alternative, she argues that the

7    deadline for her to return was equitably tolled from September 23, 2007 to October 2, 2007.

8    Plaintiff also claims that Defendant violated her FMLA rights by failing to inform her that

9    she faced termination if she failed to return to work.

10             A.     Equitable Estoppel

11       This Court has not found, nor has either party identified, any Ninth Circuit authority

12    applying equitable estoppel in FMLA cases.  <u>See also</u> <u>Headlee v. Vindra, Inc.</u>, 2005 WL

13    946981, at *2 n.3 (N.D. Cal. 2005) ("the Ninth Circuit has not applied equitable estoppel

14    under the FMLA"); <u>Farina v. Compuware Corp.</u>, 256 F. Supp. 2d 1033, 1057 (D. Ariz. 2003)

15    ("[t]he Ninth Circuit has not applied equitable estoppel under the FMLA").  Nonetheless,

16    when the Ninth Circuit has applied equitable estoppel to statutes, it has generally done so as

17    articulated in <u>Naton v. Bank of California</u>, 649 F.2d 691 (9th Cir. 1981), which dealt with the

18    statute of limitations period under the ADEA.  <u>See</u> <u>Headlee</u>, 2005 WL 946981, at *2 n.3.

19       In <u>Naton</u>, the court explained that "a finding of estoppel must rest on consideration of

20    several factors," including "plaintiff's actual and reasonable reliance on defendant's conduct

21    or representations."  649 F.2d at 696.  The court continued, "Also important is evidence of

22    improper purpose on the part of the defendant, or of the defendant's actual or constructive

23    knowledge of the deceptive nature of its conduct."  <u>Id.</u>

24       There is a serious question in this case as to whether Defendant actually made a

25    representation to Plaintiff that July 1, 2007 through October 1, 2007 was the appropriate

26    leave period.  There is also a serious question as to whether Plaintiff's reliance on any such

27    representation, in flying to Egypt for several months and leaving no forwarding information,

28    was reasonable.  Much of the motion hearing was spent on these questions.  Setting these

United States District Court
For the Northern District of California

1  aside, however, there is no question that Defendant had <u>no</u> improper purpose; Plaintiff does

2  not even so allege.  In addition, while Plaintiff's counsel pointed to <u>Naton</u>'s alternative

3  language as to "actual or constructive knowledge of the deceptive nature of its conduct" at

4  the motion hearing, there is no compelling basis for finding actual or constructive knowledge

5  here.

6       Plaintiff would prefer for the Court to ignore <u>Naton</u> and follow two district court cases

7  from other circuits: <u>Blankenship v. Buchanan General Hospital</u>, 999 F. Supp. 832 (W.D. Va.

8  1998) and <u>Barone v. Leukemia Society</u>, 42 F. Supp. 2d 452 (D. N.J. 1998).  The Court is not

9  at liberty to do so.  Similarly, the Court is aware of a handful of cases from other circuit

10  courts that have applied equitable estoppel to FMLA eligibility claims and did not require an

11  improper purpose by the defendant.  <u>See, e.g.</u>, <u>Dobrowski v. Jay Dee Contractors, Inc.</u>, 571

12  F.3d 551, 556 (6th Cir. 2009); <u>Reed v. Lear Corp.</u>, 556 F.3d 674, 678 (8th Cir. 2009); <u>Minard</u>

13  <u>v. ITC Deltacom Communications, Inc.</u>, 447 F.3d 352, 358 (5th Cir. 2006); <u>Kosakow v. New</u>

14  <u>Rochelle Radiology Assoc., P.C.</u>, 274 F.3d 706, 726 (2d Cir. 2001).  However, this is not an

15  eligibility case– for which it arguably makes considerable sense to use a lower standard for

16  estoppel– and this is not the Sixth, Eighth, Fifth, or Second Circuit.

17       Accordingly, this Court will follow the <u>Naton</u> definition of equitable estoppel, which

18  has been used repeatedly in this Circuit.  <u>See, e.g.</u>, <u>Socop-Gonzalez v. INS</u>, 272 F.3d 1176,

19  1184 (9th Cir. 2001) (immigration case citing <u>Naton</u>, finding that equitable estoppel requires

20  "affirmative misconduct" by the defendant, defined as a "deliberate lie" or "pattern of false

21  promises"); <u>Santa Maria v. Pacific Bell</u>, 202 F.3d 1170, 1176 (9th Cir. 2000) (ADA claim,

22  citing <u>Naton</u>); <u>Funk v. Sperry Corp.</u>, 842 F.2d 1129, 1134 (9th Cir. 1988) (ADEA claim,

23  citing <u>Naton</u>, finding that district court properly refused to equitably estop defendant where

24  there was no improper purpose); <u>Farina</u>, 256 F. Supp. 2d at 1057 (D. Ariz. 2003) (FMLA

25  claim, citing <u>Naton</u>); <u>Headlee</u>, 2005 WL 946981, at *2 (FMLA claim, citing <u>Naton</u>).  <u>See</u>

26  <u>also</u> <u>O'Donnell v. Vencor, Inc.</u>, 465 F.3d 1063, 1067 (9th Cir. 2006) (ADEA claim, using

27  same definition of equitable estoppel but citing <u>Santa Maria</u> in lieu of <u>Naton</u>).  Following this

28  circuit's authority, Plaintiff cannot establish equitable estoppel.

**United States District Court**
For the Northern District of California

B.      Equitable Tolling

In the alternative, Plaintiff argues that the deadline for her to return to work should be tolled from September 23, 2007 to October 2, 2007.  Opp. at 12.  She asserts that equitable tolling, as opposed to equitable estoppel, does not depend on the wrongful conduct of the defendant, "only that the circumstances be such that the plaintiff could not reasonably have been expected to act within the deadline."  Id. (citing Rager v. Dade Behring, Inc., 210 F.3d 776, 779 (7th Cir. 2000)).  Rager held that equitable tolling could be applied to FMLA's 15 day deadline for employees to obtain medical documentation; however, the court noted that the regulations regarding medical documentation actually provided for tolling.  210 F.3d at 778, citing 29 C.F.R. § 825.305(b).[3]  Plaintiff also relies on Waltmon v. Ecology & Environment, Inc., 2001 U.S. Dist. LEXIS 5981, at *29-30 (N.D. Cal. 2001), which also dealt with the FMLA medical documentation deadline, and also noted that the regulations specifically provided for tolling.

Plaintiff has not directed the Court to any authority within the Ninth Circuit or elsewhere permitting equitable tolling in the present circumstances.  The Court finds no basis for tolling and declines to extend the doctrine to this context.  See also Zahn v. Appleburg, 2007 WL 473788 at *1 (E.D. Wash. 2007) (noting in FMLA statute of limitations context that "it is unclear whether the doctrine of equitable tolling is available under any circumstances").

C.      Failure to Give Notice of Consequences of Failure to Return

Plaintiff's third and weakest argument for how Defendant interfered with her FMLA leave is that Defendant never told Plaintiff that she faced termination if she failed to immediately return from leave.  See Opp. at 13.  Plaintiff bases this argument on 29 C.F.R. § 825.300(c)(1),[4] which states that an employer should provide the employee with "written notice detailing the specific expectations and obligations of the employee [as to FMLA

---

[3] "[E]mployee must provide the requested certification to the employer within the time frame requested by the employer . . . unless it is not practicable under the particular circumstances to do so despite the employee's diligent, good faith efforts."

[4] Identified in Plaintiff's brief as 29 C.F.R. § 825.301.  Opp. at 13.

**United States District Court**
For the Northern District of California

obligations] and explaining any consequences of a failure to meet these obligations."
Plaintiff attaches a copy of Defendant's 2002 employee handbook, which fails to describe the
consequences of failing to return from leave.  See Adams Decl. Ex. 7.

        However, in its Reply, Defendant points to an excerpt from its 2006 employee
handbook, which clearly states: "If an employee fails to return at the end of FMLA leave, the
employee will be considered to have voluntarily resigned his/her position with the
organization."  Supp. Smith Decl. Ex. A at 4 of 6.  Moreover, Plaintiff signed a form
acknowledging receipt of this handbook, and later acknowledged having done so in her
deposition.  Supp. Schwachter Decl. at Ex. 36; id. at Tr. 327:5-12.  There is no evidence to
the contrary.[5]  Accordingly, Plaintiff has not raised a genuine issue of material fact and this
argument fails.

        3.    Retaliation for FMLA Leave

        To prove a claim for retaliation for exercising FMLA rights, a plaintiff must establish
a prima facie case by showing that (1) she exercised a protected right under FMLA; (2) she
suffered an adverse employment action; and (3) there was a causal connection between the
two.  Dudley v. Dept. of Transportation, 90 Cal. App. 4th 255, 261 (2001).  If an employee
makes out such a prima facie case, the employer must articulate a legitimate, non-retaliatory
reason for the adverse employment action.  Once articulated, the plaintiff must prove that the

---

[5]On October 30, 2009, following the motion hearing, Plaintiff filed a Motion for Administrative Relief from Truncated Oral Argument, arguing that the Court "concluded the hearing on this motion before [counsel] had the opportunity to raise a potentially material argument on a theory argued in the papers."  MAR at 1.  The motion seeks to submit a proposed letter brief, which contends that Defendant's argument in its Reply, that Plaintiff admitted in her deposition to having received the 2006 Handbook, is improper, and that "Defendant has failed to lay a proper foundation for . . . the 2006 handbook."  Id., Ltr. Brf. at 1.
        Plaintiff could have objected to Defendant's evidence in the month between the filing of the Reply brief on September 21, 2009, and the motion hearing on October 30, 2009.  Plaintiff could also have objected to Defendant's evidence during the rather lengthy motion hearing, including the discussion of evidentiary objections that took place at its beginning.  Nonetheless, the Court has carefully read and considered Plaintiff's letter brief.
        The Court finds that Plaintiff's argument is without merit.  Defendant submitted the 2006 handbook excerpt as an exhibit to the supplemental declaration of Lavon Smith, the director of HR at Defendant, who stated according to personal knowledge that the 2006 handbook had been "distributed to all of our employees, including Plaintiff."  Supp. Smith Decl. at 2.  The Court finds that there is sufficient foundation for the 2006 handbook, and notes that Plaintiff has submitted no evidence contesting her receipt of the handbook.

United States District Court
For the Northern District of California

1    employer's proffered reason is a pretext.  <u>Stegall v. Citadel Broadcasting Co.</u>, 350 F.3d 1061,

2    1066 (9th Cir. 2003).

3          Plaintiff claims that Defendant retaliated against her for "appealing" the September

4    23, 2007 return date during her September 19, 2007 call with Johnson and Perkins.  Opp. at

5    14; <u>see also</u> Shaaban Decl. at 6.  She argues that her "appeal" on the call constituted an

6    assertion of her FMLA rights, activity that is protected under 29 CFR § 825.220(a)(2) ("An

7    employer is prohibited from discharging or in any other way discriminating against any

8    person . . . for opposing or complaining about any unlawful practice under the Act").

9    Assuming that Plaintiff has established a prima facie case, Defendant has come forward with

10   a legitimate, non-retaliatory reason for her termination: that she failed to return to work at the

11   end of her leave.  MSJ at 12.  The main question is whether Plaintiff can prove that

12   Defendant's proffered reason is a pretext.

13         Defendant argues that she cannot, and points to Plaintiff's deposition, in which

14   Plaintiff's counsel stipulated that Plaintiff had no information that she was terminated for any

15   reason other than her failure to return to work.  <u>Id.</u> at 12, citing Schwachter Decl. Ex. B at

16   74:25-75:21.  Plaintiff attempted to revive this claim in her Opposition, and argued that "to

17   defeat summary judgment, Plaintiff's evidence may be minimal."  Opp. at 14 (citing <u>Jacoban</u>

18   <u>v. Fred Meyer Stores, Inc.</u>, 2003 U.S. Dist. LEXIS 27199, at *12 (D. Ore. 2003)).  While

19   minimal evidence might be sufficient, Plaintiff has not come forward with any evidence of

20   pretext that raises a genuine issue of material fact.  The Court further notes that Plaintiff's

21   termination appears to have followed the policy set forth in her employee handbook.  <u>See</u>

22   Supp. Smith Decl. Ex. A at 4 of 6.  Because she cannot establish pretext, Plaintiff's

23   retaliation claim fails.

## CONCLUSION

24

25         For the foregoing reasons, the Court GRANTS summary judgment on the FMLA

26   //

27   //

28   //

1   interference and retaliation claims.

2   **IT IS SO ORDERED.**

3

4   

5   Dated: November 10, 2009

6   CHARLES  R. BREYER
    UNITED STATES DISTRICT JUDGE